**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TODD BRISTOL, KIMBERLY BRISTOL, and**
**SUGAR SHACK'S WATER, INC.,**

                                    **Plaintiffs,**

        **vs.**                                    **6:22-CV-845**
                                                   **(TJM/ML)**


**TOWN OF CAMDEN, et al.,**

                                    **Defendants.**
_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**

### DECISION & ORDER

        Before the Court are the motions to dismiss of various Defendants in this case,

which involves disputes over the enforcement of zoning ordinances by Defendant Town of

Camden.  See dkt. #s 31, 40, 45.  Plaintiffs allege that the Defendants violated their

constitutional rights and their state-law rights by interfering with their ability to operate

certain businesses on property in the Defendant Town.  The parties have briefed the

issues and the Court will decide the matter without oral argument.

### I.      BACKGROUND

        Plaintiff Todd Bristol owns real property located at 9776 Shady Lake Road in the

Town of Camden, New York.  Complaint ("Cmplt."), Exh. A to dkt. # 1, at ¶ 18.  Todd

Bristol and his wife, Plaintiff Kimberly Bristol, are sole shareholders and officers of Plaintiff

Sugar Shacks.  Id. at ¶ 19.  Kimberly Bristol is sole shareholder of the company, and both

individual Plaintiffs are employees of Sugar Shacks.  Id.  Sugar Shacks leases the property on Shady Lake Road from Todd Bristol for the purpose of conducting the company's business operations.  Id. at ¶ 20.

Plaintiff Todd Bristol obtained the property in February 2016 for the purpose "of conducting commercial, industrial and related business operations."  Id. at ¶ 21.  He acquired the property "specifically because it is located in the 'Rural District' established by the Town of Camden Zoning Map[.]" Id. at ¶ 22.  He "relied on" that zoning designation. Id.  Plaintiff alleges that under the Town of Camden Zoning Law, "the purpose of the Rural District is to 'provide areas for commercial, industrial, agricultural and forestry uses in a low-density, rural environment **without the need for being constrained due to residential uses**.'" Id. at ¶ 23 (quoting Town of Camden Zoning Law § 30.21 (emphasis added in Complaint)).

The property in question consists of more than 22 acres of land, most of which is wooded.  Id. at ¶ 24.  The land surrounding the property is "farmland and wooded lots which are frequently used for agricultural purposes (such as mowing and baling hay, and planting and harvesting corn) and forestry uses (such as logging or cutting trees for firewood)."  Id.  Sugar Shacks operates two "separate and distinct primary lines of business."  Id. at ¶ 25.  The first business is a trucking company that "primarily hauls and delivers water."  Id.  The second business uses "a sawmill to saw logs into cants for . . . crane mats[1] and drilling equipment to drill and assemble the crane mats."  Id. at ¶ 26.

---

[1] "Crane mats are designed to support both the weight and the movement of heavy machinery. Built from high-quality, durable materials like timber, crane mats are used for support and stabilization purposes." https://www.astrocrane.com/things-to-know-about-timber-crane-mats/ (consulted 4/12/23).

2

Plaintiffs obtained a Special Use Permit (SUP) from the Camden Zoning Planning Board on July 11, 2018 that permitted the construction of a 40'x64' building for commercial truck storage on the property to support the trucking business.  Id. at ¶ 27.  The Planning Board issued a second SUP on July 7, 2021 for the same purpose, but which includes restrictions and conditions: "'Repairs/maintenance of vehicles shall be limited to personally or company-owned vehicles and/or equipment only.  Repairs/maintenance of other vehicles or equipment for profit shall not be allowed under this Special Use Permit."  Id. at ¶ 28.  The second SUP superseded the one issued on July 11, 2018 "'to clarify the repair/maintenance of vehicles and equipment.'"  Id. at ¶ 29.

Todd Bristol obtained an SUP for the crane mat business on October 7, 2020.  Id. at ¶ 30.  That SUP's purpose was "'[t]o construct a 20'x26' three sided pole barn for the purpose of drilling and assembling crane mats."  Id. at ¶ 30.  That SUP contained restrictions and conditions: "'[h]ours of Operation shall be 7:00am till dark Monday-Friday from Memorial Day to Labor Day and 8:00am till dark Monday-Friday the rest of the year.'"  Id. at ¶ 31.

Before 2021, Plaintiffs purchased pre-cut parts for crane mats ("cants") and drilled and assembled the mats on-site.  Id. at ¶ 51.  A lumber shortage in 2020 made it difficult for Plaintiffs to obtain the pre-cut cants necessary to meet orders for crane mats.  Id. at ¶ 52.  To address this issue, Plaintiffs in early 2021 acquired a portable sawmill to begin to saw logs into cants.  Id.  Plaintiff alleges that the portable sawmill "constituted a 'nonstructural forestry use' which did not require a Special Use Permit or any zoning permit under the Zoning Law."  Id. at ¶ 53 (quoting Zoning Law § 30.92.B.7).

Plaintiff alleges that, after they began using the portable sawmill, Defendant Tyler

3

Henry, who was a member of the Planning Board, came to the Plaintiffs' property at the end of March or beginning of April 2021 and "wrongfully informed Todd [Bristol] that he was required to amend the" SUP for the crane mat "to include the sawmill." Id. at ¶ 54. Despite his belief that such an amended SUP was not required by the zoning law, Plaintiff Todd Bristol submitted an application to amend the SUP "to appease the Planning Board, with the understanding that Plaintiffs could continue operating the sawmill while such application was pending." Id. at ¶ 55. Plaintiff contends that filing this application for an amended SUP "was the first of many instances" where he "submitted to unlawful requirements and restrictions imposed by the Town Board and the Planning Board in the spirit of cooperation and compliance, and in an attempt to accommodate and appease the Town so . . . he could carry on his business without further interference from the Town." Id. at ¶ 56. Plaintiffs allege that the Town Board unanimously voted on April 7, 2021 to permit them to continue operating the sawmill until a hearing on the issue scheduled for May 5, 2021. Id. at ¶ 57.

The May 5, 2021 Planning Board public hearing was contentious, "with members of the public," mostly Plaintiff's neighbors, "shouting their objections to" Plaintiffs' "expanded activity that did not pertain to the addition of the sawmill subject to the application before the Planning Board." Id. at ¶ 58. Members of the public who complained at the meeting did not complain about the proposed addition of the sawmill, but instead complained about "all noise and dust related to the operation of loaders, chainsaws and trucks." Id. at ¶ 59. Despite these irrelevant complaints, the Planning Board ordered that Plaintiffs cease operating the sawmill on or before May 21, 2021, when the Planning Board would meet to provide "final approval for the operation of the sawmill." Id. at ¶ 60. Defendants made

their decision to order the sawmill to cease operations after the meeting ended, and only informed Plaintiffs two days later during a visit from two Board members.  Id. at ¶ 61.

Plaintiff Todd Bristol tried several times to contact the Code Enforcement Officer and the Planning Board to ask for relief to allow him to continue operations until the Planning Board reached its final determination.  Id. at ¶ 62.  Neither responded.  Id. at ¶ 63.  Instead, the Code Enforcement Officer issued a Stop Work Order dated May 21, 2021.  Id.  Despite disputing that the Order could be enforced, "Plaintiffs respectfully and cooperatively ceased operating the sawmill as required by" the Order.  Id. at ¶ 64.  Work stopped for three weeks "until the Planning Board made a determination on the application to amend the" first crane mat SUP.  Id.  The Planning Board permitted operation of the sawmill to resume "after certain fencing was constructed."  Id.

After two more Planning Board meetings on June 2, 2021 and June 9, 2021, the Planning Board issued an SUP to Plaintiff Todd Bristol that allowed "use of a band sawmill for producing lumber for crane mats."  Id. at ¶ 65.  The SUP contained a number of restrictions and conditions, providing that Plaintiffs must:

> 1.  Construct a 24' x 60' building for the sawmill with a 16' x 16' sawdust building;
> 2.  Use back-up cameras on loaders instead of back-up beepers provided they comply with OSHA requirements;
> 3.  Watering a work area as needed to control dust;
> 4.  Construct a 12' fence on the north edge of the property approximately 240' from the property line and a 6' fence along the road extending from the 12' fence to the north edge of the sawmill building with an allowance for one 50' opening maximum;
> 5.  The sawmill building shall be no closer to the north property line than 340';
> 6.  The hours of operation for the sawmill and crane mat operations shall be from 8:00am-5:00pm M-F with an additional 2 hours at the end of each work day to allow for clean up of the site;
> 7.  Slab wood shall be removed from the property when there is sufficient accumulation to fill a tractor trailer;
> 8.  Completion of the 6' fence along the road shall be complete prior to any sawmill operations;

5

9.  Completion of all remaining construction described in this permit shall be within 90 days of this approval;
10.  The sawmill shall only be used to mill lumber that is used for the assembly of crane mats; and
11.  A single band saw is the only permitted sawmill.

Id. at ¶ 66.

Plaintiffs "worked diligently to meet and comply with" the restrictions in the new SUP in a timely manner, even though they allege that these restrictions were "unlawful." Id. at ¶ 67.  Though the terms of the SUP "unfairly and unlawfully limited Plaintiffs' businesses and Plaintiffs never accepted them as a legitimate and lawful act of the Planning Board," Plaintiffs "believed they could accept the economic harm caused to them personally and to the Crane Mat Business" if they could "operate in peace by appeasing the Planning Board" and the neighbors who had complained about their use of the property.  Id. at ¶ 68.

Plaintiffs attempted to meet the time frames required by the new SUP, but delays caused by the Code Enforcement Office's failure to issue building permits and delays in obtaining building materials prevented them from doing so.  Id. at ¶ 69.  Plaintiffs, through their attorney, informed the Code Enforcement Officer and the Town of the reasons for these delays and promised to complete the required construction when materials were available.  Id. at ¶ 70.  Despite these communications, the Code Enforcement Officer issued a Notice of Violation on September 17, 2021.  Id. at ¶ 71.  Plaintiffs contend that the notice came at the insistence of neighbors who complained to the Town.  Id. at ¶ 71.  Plaintiffs received the delayed materials shortly after receiving the Notice and completed the required construction.  Id. at ¶ 72.

During this time period, Plaintiffs received frequent visits from the Code

6

Enforcement Officer due to complaints from neighbors about "continued use of reverse signal alarms on equipment and the accumulation of slab wood on the" property.  Id. at ¶ 73.  Plaintiff alleges that these complaints from neighbors were part of a campaign by the neighbors to use "the Town as a tool and vehicle to harass and intimidate Plaintiffs and to shut their business operations down."  Id. at ¶ 74.  The Town, Plaintiffs allege, "continuously and willfully violated Plaintiffs' rights in the misguided hope" that the Town could "appeas[e]" those neighbors.  Id. at ¶ 75.

Todd Bristol submitted an application to amend the SUP on September 27, 2021. Id. at ¶ 76.  He offered "detailed explanations" for the changes he sought.  Id.  He noted that the use of back-up cameras rather than beepers violated Occupational Health and Safety Administration ("OSHA") standards and asked that the condition be removed.  Id. at ¶ 76(1).  Bristol likewise asked that another condition, which required that the work area be watered to control dust, be omitted.  Id. at ¶ 76(2).  He also sought removal of another restriction, which limited work hours to 8:00am-5:00pm Monday through Friday, with an additional 2 hours at the end of each work day for cleanup.  Id. at ¶ 76(3).  Bristol also sought to get rid of a restriction that required slab wood to be removed from the property when an accumulation sufficient to fill a tractor trailer existed.  Id. at ¶ 76(4).  Finally, Bristol sought modification of a restriction on use of the lumber produced by the mill; while he agreed that the mill would not be used to saw lumber for whole- or retail sale, he sought leave to sell, dispose, or remove "by-products from the use of the sawmill, including, but not limited to, slab wood . . . in any manner" Bristol "deem[ed] fit."  Id. at ¶ 76(5).

The Town Attorney sought a meeting with Todd Bristol after he submitted this

application. Id. at ¶ 77.  Bristol agreed to a meeting, even though he had no legal

obligation to do so.  Id.  He sought to work with the Town and obtain leave to operate his

crane mat business "free of any further harassment or interference by the Town."  Id.

Plaintiffs Todd and Kimberly Bristol met with representatives from the Town, including

Town Board members, members of the Planning Board, and the Code Enforcement

Officer on October 14, 2021.  Id. at ¶ 78.  The parties discussed Plaintiffs' compliance with

the requirements of the SUP, including the use of back-up beepers and the accumulation

of slab wood on the property.  Id. at ¶ 79.

At that meeting, the parties reached "an understanding" that Plaintiffs: "had

completed all required construction and was in full compliance with respect to those

matters"; that the backup beepers that Plaintiffs' used were required by OSHA and thus

did not violate the terms of the SUP; Plaintiffs would be permitted to have a wood chipper

on the property at the end of November 2021 and beginning of December 2021 "to chip or

grind all of the accumulated slab wood," which would then be sold to a local military base

as bio fuel; and that "the Planning Board would not accept the Application to Amend

unless" Plaintiffs "submitted supplemental materials to show changed circumstances or

new facts which would warrant an amendment" to the amended SUP.  Id. at ¶ 80.

Plaintiffs would be permitted a chance to submit such material.  Id.

Following this meeting, Plaintiffs engaged a third-party contractor to perform the

wood-chipping on the slab wood.  Id. at ¶ 81.  The contractor began performing the work

on December 1, 2021.  Id.  The next day, the Code Enforcement Officer, at Defendant

Henry's direction, "unlawfully issued a Stop Work Order," directing Plaintiffs "'to suspend

all active work operations associated with the mechanical chipping, reducing and

processing of waste wood material." Id. at ¶ 82.  Defendants cited the SUP as a basis for this order.  Id.  At that time, and over the next ten days, the Code Enforcement Officer issued "repeated Notices of Violation related to the wood chipping activity."  Id. at ¶ 83. These actions came despite the understanding the parties had reached in their October meeting, and even thought the SUP did not contain restrictions on the use of a woodchipper or limits on the hours of operation of third-party contractors.  Id. at ¶¶ 84-85. Moreover, Plaintiffs claim, "operation of a woodchipper is a non-structural forest management use which does not require any Special Use Permit or other zoning permit" in the Town of Camden.  Id. at ¶ 86.  The work to remove the slab wood concluded on December 13, 2021.  Id. at ¶ 88.  The contractor providing the woodchipper has since refused to perform any future work on the property because of these notices from the Town.  Id. at ¶ 87.

By letter on December 8, 2021, Plaintiff's supplemented their application to amend the SUP.  Id. at ¶ 103.  They set forth "new facts and changed circumstances" that justified amendment.  Id.  Defendant Barker, Chairman of the Planning Board, emailed Plaintiffs on February 3, 2022 to inform them that the Planning Board had voted to accept the application to amend, "pending receipt of (1) a to-scale site plan of the Subject Property, (2) an explanation of why Plaintiffs feel deliveries and shipments must occur outside normal operating hours, and (3) decibel level readings of the equipment back up beepers currently in use."  Id. at ¶ 104.  Though Plaintiffs objected to these requests, Plaintiff's counsel sent a letter to the Board on March 1, 2022 that "provided . . . all of the material requested by the Planning Board" on February 3, 2022.  Id. at ¶ 105.

After public hearings on March 2, 2022 and April 5, 2022, the Planning Board

issued a Final Amended Crane Mat SUP.  Id. at ¶ 118.  Plaintiffs contend that the

Planning Board accepted complaints from neighbors that ignored the actual condition of

the property and the noise created by the work.  See id. at ¶¶ 106-117.  The final SUP

contained a number of restrictions and conditions, including requirements that Plaintiffs:

> 1.  Construct a 24' x 60' building to enclose the saw and a 16' x 16' sawdust building.  This item is complete.
> 2.  Either a): Obtain and use a variable decibel audible back-up warning alarm set to the minimum level complying with current OSHA requirements for businesses such as this operation or b): utilize a flag person in accordance with OSHA requirements;
> 3.  Water the Work Area as needed to control dust;
> 4.  Fence shall remain as shown on the application drawing, except extend the fence along the northern side of the Property to the woods line;
> 5.  The building shall be no closer to the property line than 340';
> 6.  The hours of operation, including deliveries and shipments, shall be from 8:00am to 5:00pm, Monday through Friday. This, to include subcontractors;
> 7.  Byproducts from the operation may be stored on the property, behind the fence, as long as they are not visible from public roadways.  This material shall not be chipped, ground, or burned on-site;
> 8.  All fencing shall be maintained in a functional state.  Earth-tone colors only shall be allowed.
> 9.  This permit for one band saw only.
> 10.  This permit does not allow for retail or wholesale lumber sales.

Id. at ¶ 118.  Plaintiffs allege that, rather than amend the SUP to meet their objections,

Defendants added additional restrictions.  Id. at ¶ 119.  Plaintiffs allege that these

restrictions caused financial harm, limiting productivity and reducing weekly revenue by

$31,800.  Id. at ¶¶ 126-27.  Plaintiffs also lost revenue due to lost contracts from buyers

whose demands Plaintiffs could not meet.  Id. at ¶¶ 128-29.  Plaintiffs also lost funds they

had spent on supplies in anticipation of meeting these rescinded contracts.  Id. at ¶ 130.

Plaintiffs estimate their total damages from this "lost productivity, lost business

opportunities, lost contracts, lost revenue and lost profits" as "in excess of $6,800,000."

Id. at ¶ 131.  An inability to sell or dispose of byproducts will also cost Plaintiffs more than

$1 million.  Id. at ¶ 132.  Plaintiffs point to other costs and expenses that resulted from Defendants' zoning actions.  Id. at ¶¶ 133-136.

Plaintiffs filed a Complaint in the Supreme Court of Oneida County, New York on July 20, 2022.  See Complt.  The Complaint contains 17 causes of action.  Count One seeks a declaratory judgment that the restrictions placed on use of the property by the SUPs issued by Defendants are null and void because they violate section 30.21 of the Town of Camden zoning law.[2]  The rest of the claims arise under federal and New York law.  The federal claims raise four causes of action pursuant to 42 U.S.C. § 1983. Plaintiffs allege violations of their rights to procedural and substantive due process and equal protection, and that Defendants' actions constituted an unconstitutional taking. Plaintiffs also allege a variety of state-law torts.

Defendants removed the case to this Court.  See dkt. # 1.  Some of the individual defendants filed answers.  See dkt. #s 8-10, 16.  One Defendant filed a second answer and counterclaims after obtaining counsel.  See dkt. # 17.  Two of the Defendants who filed answers later filed motions to dismiss after obtaining counsel.  See dkt. #s 40, 45.  In lieu of answering, the Defendants who were not private individuals ("The Town Defendants") filed a motion to dismiss.  See dkt. # 31.  The parties have briefed the

---

[2]That Section of the Town of Camden Zoning Law is part of Article II, which governs "Zoning Districts and Boundaries."  See Town of Camden Zoning Law, appended as an exhibit to Plaintiffs' Complaint, dkt. # 1-1.  Section 30.21 is titled "Establishment of Zoning Districts."  Zoning Law, § 30.21.  The section provides that "[f]or the purpose of this Chapter, the Town of Camden is divided into" specific "classes" of zoning districts.  Id. Plaintiffs allege that the property in question is in a "Rural District (RUR)."  Id.  The law provides that "[t]he purpose of this district is to provide areas for commercial, industrial, agriculture and forestry use in a low-density, rural environment without the need for being constrained due to residential uses."  Id.

issues, and the matters are ripe for disposition.  For reasons that will become apparent, the Court will only address the Town Defendants' motion to dismiss the federal claims raised in this matter.

## II.   LEGAL STANDARDS

The Town Defendants seek dismissal on the basis of two federal rules, which the Court will address in turn.

### A.   Federal Rule of Civil Procedure 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the distrcit court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  "'The burden of proving jurisdiction is on the party asserting it.'" Daly v. Citigroup Inc., 939 F.3d 415, 425 (2d Cir. 2019) (quoting Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994)).  "'In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction.'" Foutain v. Karim, 838 F.3d 129, 134 (2d Cir. 2016) (quoting Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014)).  "'[T]he court may resolve the disputed jurisdictional fact issues by referring to evidence outside the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing.'" Id. (quoting Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000)).  A court should address challenges to subject matter jurisdiction before considering other defenses, since "if [a court] must dismiss the complaint for lack of subject matter jurisdiction, the [defendants'] defenses and objections

become moot and do not need to be determined.'" Id. at 426 (quoting Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990)).

### B.    Federal Rule of Civil Procedure 12(b)(6)

The Defendants in the alternative seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendants argue that Plaintiffs have not stated a claim upon which relief could be granted, even if all factual allegations in the complaint were proved true.  In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."  Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009).  This tenet does not apply to legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).

## III.    ANALYSIS

### A.    Subject Matter Jurisdiction

The Court will first address the issue of subject matter jurisdiction, since, as explained above, a court that lacks subject matter jurisdiction should not rule on the underlying merits of the claims asserted.

Defendants here argue that Plaintiffs Todd and Kimberly Bristol lack standing to raise their claims.  Defendants claim that the Bristols have not alleged that they suffered "a direct and individualized injury, as opposed to a purported injury to the Sugar Shack's

13

Water company."  Plaintiffs here claim an injury only on behalf of the company, and not an injury that harmed them.  As such, Defendants claim, they lack standing to sue.  Plaintiffs respond that they have pled that Todd Bristol owns the property in question, and suffers and injury-in-fact from acts that harm the property.  Plaintiffs also point out that they have pled counts that allege direct injury to both Todd and Kimberly Bristol.

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" Silva v. Farrish, 47 F.4th 78, 86 (2d Cir. 2022) (quoting U.S. Const., art. III, § 2).  "The doctrine of standing applies the case-or-controversy requirement by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" Id. (quoting Luhan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).  "'[A] plaintiff asserting standing must allege facts that affirmatively and plausibly suggest that [she] has standing to sue and courts need not credit a complaint's conclusory statements without reference to its factual content.'" Soule v. Conn. Ass'n of Sch., 57 F.4th 43, 50 (2d Cir. 2022) (quoting Conn. Parents Union v. Russell-Tucker, 8 F.4th 167, 172 (2d Cir. 2021) (internal citations omitted, internal alterations maintained)).  Standing is necessary to maintain an action in federal court:  "[t]o satisfy the constitutional requirement of standing, plaintiffs in federal court bear the burden of establishing that (1) they have suffered an 'injury in fact–an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical'; (2) the injury is 'fairly traceable to the challenged action of the defendant'; and (3) it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" Id. (quoting Luhan, 504 U.S. at 560-61).  "'Particularized' injuries 'affect the plaintiff in a personal and individual way.'" Harty v. West Point Realty, Inc., 28 F.4th 435, 442 (2d Cir.

14

2022) (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 340 (2016)).  "Concrete Injuries are 'physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts.'" Id. (quoting TransUnion LLC v. Ramirez, 594 U.S. ___, ___, 141 S.Ct. 2190, 2206 (2021)).   Standing  is "a 'jurisdictional' requirement and 'must be assessed before reaching the merits.'" Calcano v. Swarovski N. Am. Ltd., 36 F.4th 68, 74 (2d Cir. 2022) (quoting Byrd v. United States, 138 S.Ct. 1518, 1530 (2018)).

Plaintiffs' Complaint alleges that Todd Bristol owns the property in question, and that he and Kimberly Bristol are sole shareholders and officers of Sugar Shacks.  Complt. at ¶¶ 18-19.  The Complaint also alleges that Sugar Shacks employs both.  Id. at ¶ 19. Moreover, Plaintiffs allege that Sugar Shacks leases the property from Todd Bristol to permit the company to operate its business.  Id. at ¶ 20.  He "acquired the property" in question "for the purposes of conducting commercial, industrial and related business operations."  Id. at ¶ 21.  Read as a whole, the Complaint alleges that the Town of Camden, Town of Camden officials, and Plaintiffs' neighbors worked together to undermine Plaintiffs' operation of their businesses on the property in question.  The Town Defendants in particular allegedly enforced zoning laws unfairly and in a way designed to undermine the Plaintiffs' businesses, costing them a considerable amount of money. Despite repeated efforts by Plaintiffs to comply with arbitrary rulings, the Town Defendants changed the rules to prevent Plaintiffs from using the property in the way that Plaintiffs intended.  Plaintiffs allege that Defendants' actions caused them to cease operating the sawmill for a period of time, to become less productive, to sell fewer products, and to alter their operations in a variety of ways that cost them money.  Id. at ¶¶ 125-136.  Plaintiffs estimate these damages in the millions of dollars.  Id. at ¶¶ 131-136.

Plaintiffs' procedural due process count alleges that Defendants acted to restrict their business operations without valid legal authority and "deprive[d] Plaintiffs of all reasonable use of their property without due process" in violation of the State and federal constitutions.  Id. at ¶ 160.  Plaintiffs' substantive due process claim alleges that Defendants' conduct "deprived" them "of vested and cognizable property rights and interests without legal justification . . . and unlawfully prevented Plaintiffs from operating their business on the" property in question.  Id. at ¶ 190.  They make a similar claim with reference to their equal protection rights.  Id. at ¶ 197.  Plaintiffs' takings claim alleges that Defendants' conduct prevented Plaintiffs from using the property in question for the purposes for which they bought it, but instead "restrained such use solely . . . to residential uses."  Id. at ¶ 208.  Plaintiffs further allege that this conduct "caus[ed] Plaintiffs to lose contracts, lose business opportunities, and lose profits."  Id. at ¶ 211.  Among the state-law claims that Plaintiffs raise are claims specifically raised by Todd Bristol and Kimberly Bristol for intentional and negligent infliction of emotional distress caused by the Defendants' conduct.  See Courts 7-10.

The Court finds these allegations sufficient to create standing for the individual Plaintiffs.  Defendants' position is that the only concrete injury alleged in the complaint is to Sugar Shacks, and that none of the injuries the individual Plaintiffs' allege are concrete and particularized to them.  As explained, the Complaint alleges that Plaintiff Todd Bristol has a direct ownership interest in the property.  Read in a way that makes reasonable inferences in Plaintiffs' favor, the Court also reads the Complaint to allege that Plaintiffs are the ultimate beneficiaries of the net income of Sugar Shacks, since they are allegedly the only shareholders of the company.  Defendants' alleged actions diminished the value

of the property and the value of the business and thus caused a concrete economic injury to the individual Plaintiffs fairly traceable to the Defendants' conduct.  In addition, Plaintiffs also allege that Defendants' conduct caused them emotional distress, injuries which are concrete and particularized to the individual Plaintiffs.  Sugar Shacks does not allege any emotional injury.[3]

### B.    Procedural Due Process

The Town Defendants next seek dismissal of Plaintiff's procedural due process claims.  Defendants dispute that Plaintiffs have a protected property interest in using the property in question without restrictions, and therefore cannot state a claim.  Even if they had such a property interest, Defendants claim, Plaintiffs could not show an unconstitutional deprivation of that interest.  Plaintiffs contend that they had a protected interest, which the Defendants prevented them from enjoying.

Plaintiffs' claim here concerns a zoning dispute.  Under those circumstances, courts are clear that "'the Due Process Clause does not function as a general overseer of arbitrariness in state and local land-use decision; in our federal system, that is the

---

[3]Plaintiffs do not offer this argument, but the Court notes that Defendants do not challenge Sugar Shack's standing on any of the claims where both Sugar Shacks and the individual Plaintiffs claim damages.  "It is well settled that where . . . multiple parties seek the same relief, 'the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement."  Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay, 868 F.3d 104, 109 (2d Cir. 2017) (quoting Rumsfeld v. Forum of Acad. and Inst. Rights, Inc., 547 U.S. 47, 52 n.2 (2006)).  "'For federal courts to have jurisdiction' over a party's claims . . . 'only one named plaintiff need have standing with respect to each claim.'" CNY Fair Hous., Inc. v. Welltower Inc., 588 F.Supp.3d 282, 299 (N.D.N.Y. 2022) (quoting Comer v. Cisneros, 37 F.3d 775, 788 (2d Cir. 1994)).  The Court merely notes this case law.  The Court finds that the individual Plaintiffs have sufficiently alleged a concrete and particularized injury to confer standing.  Those Plaintiffs have no need to rely on Sugar Shacks for standing.

province of the state courts.'" 545 Halsey Lane Props., LLC v. Town of Southhampton, 45 F.Supp.3d 257, 265 (E.D.N.Y. 2014) (quoting Sullivan v. Town of Salem, 805 F.2d 81, 82 (2d Cir. 1986)).  When addressing a zoning dispute, "[a] plaintiff states a due process claim by plausibly alleging that '(1) state action (2) deprived him or her of liberty or property (3) without due process of law.'" Bellin v. Zucker, 6 F.4th 463, 474 (2d Cir. 2021) (quoting Barrows v. Burwell, 777 F.3d 106, 113 (2d Cir. 2015)).

Defendants here contend that Plaintiffs have not alleged deprivation of a protected property interest.  In due process claims involving "actions of a state zoning authority," a court first asks "whether a constitutionally cognizable property interest is at stake." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995).  "To show such a protected interest, a plaintiff must demonstrate more than an 'abstract need or desire' for the matter at issue, or a 'unilateral expectation as to its receipt.'" ACE Partners, LLC v. Town of E. Hartford, 883 F.3d 190, 195 (2d Cir. 2018) (quoting Board of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)).  "Rather, a plaintiff must establish 'a legitimate claim of entitlement,' one 'created and . . . defined by existing rules or understandings that stem from an independent source,'" such as a zoning ordinance.  Id. (quoting, Roth, 408 U.S. at 577).  If the claim involves "a government-issued license or permit, a legitimate claim of entitlement will be found to exist 'where, under applicable state law, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted.'" Id. (quoting Harlen Assocs., Inc. v. Vill. of Mineola, 273 F.3d 494. 504 (2d Cir. 2001)).  A property interest therefore mostly depends "on 'whether the issuing authority lacks discretion to deny the permit[.]'" Id. (qouting Harlen Assocs, 273 F.3d at 504).  Thus, "'[a] clear entitlement, and in turn, a constitutionally

protected property interest, exists only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured.'" Id. (quoting Villager Pond, Inc., 56 F.3d at 378).  "The discretion of zoning boards of appeals in granting or denying variances from zoning codes is well-settled."  Tomlins v. Wappinger Falls Zoning Bd. of Appeals, 812 F.Supp.2d 357, 369 (S.D.N.Y. 2011).  The existence of such authority "is sufficient to defeat [a] due process claim against" a zoning board of appeals.  Id.

> Plaintiffs argue that they had three protected property interests:
>
> (1) Plaintiffs' rights to conduct their business operations on [their property] free from constraint due to residential uses in accordance with Zoning Law § 30.21, (2) Plaintiffs' right to engage in non-structural forest management uses without obtaining a zoning permit and without application of the Zoning Law in accordance with Zoning Law § 30.92.B.7., and (3) to the extent that Plaintiffs did need to obtain a special use permit under the Zoning Law for any aspect of the operations of the Crane Mat Business, the vested property rights created by the Special Use permit issued to Plaintiff Todd [Bristol] dated June 10, 2021.

The Court will address each of these three areas in turn.

As to the first of these alleged protected property interests, Plaintiff point to sections of the Zoning Law.  Their Complaint contains as an attachment the Zoning Law.  See dkt. # 1-1.  Plaintiffs point to Section 30.21 of the Zoning Law, which provides for "Establishment of Zoning Districts."  Id. at § 30.21.  Plaintiffs' property lies in a Rural District, where, the section provides that its "purpose . . . is to provide areas of commercial, industrial, agriculture and forestry use in a low-density, rural environment without the need for being constrained due to residential uses."  Plaintiffs read this section to ensure that they can operate "free from constraint," apparently engaging in all of the manufacturing and trucking activities they desire without any sort of restriction from the

Town.  The Court finds this reading of that provision wholly illogical.  First, the section to which the Plaintiffs refer is a section that defines the three types of zoning districts in the Town.  The first type, the "Residential District," serves "to provide exclusive residential neighborhoods within the greater rural area of the town. These areas would exclude commercial and industrial uses, be buffered from impacts of surrounding commercial and industrial uses, and have very limited home occupation within them."  Id.  The third type of district is the "Manufactured Home Overlay District," designed "to protect residential values by prohibiting single-wide manufactured homes in this area."  Id.  Nothing in this section establishes for Plaintiffs what they claim: the "right to conduct their business operations on [their property] free from constraint due to residential uses in accordance with "  The Rural District simply permits more land uses than the other two districts.  Nothing in that definition creates an expectation that Plaintiffs have an unlimited right to use their property for any sort of commercial or industrial use they desire without having to obtain a permit from the Town, or indeed without "constraint."  A property owner in a Rural District would simply have an expectation that the property could be used for more purposes than the property in the other two Districts.  Nothing in that definition limits the discretion of the Town in issuing use permits for purposes described in the Zoning Law.

Indeed, the rest of the Zoning Law makes clear that the Town contemplated inspection, and the issuance of special permits in Rural Districts.  The Zoning Law contains a "Use Schedule" that lists "Permitted Uses in Zoning Districts."  Id. at § 30.31. The schedule that is part of that section lists a variety of uses and the type of zoning approval necessary to undertake that use.  Id. at Schedule A.  For all of the uses in the RUR zone that encompasses the property in question, a landowner must obtain an SUP

from the planning board.  Id.  The Zoning Law goes on to define Special Use Permits.

See id. at § 30.32(C).  The Law provides that "[u]ses requiring a special use permit shall

be reviewed by the planning board according to the procedures of this article and shall

comply with the regulations that apply in each district or for specific uses.  No zoning

permit shall be issued for any use or structure requiring a special use permit until approval

has been granted by the planning board."  Id. at § 30.31(C)(2).  Another provision in that

section of the Zoning Law provides that in Rural Districts "[n]on residential uses shall be

allowed only if objectionable light, noise, smoke, odor, and aesthetics can be sufficiently

mitigated to protect nearby residential uses."  Id. at § 30.31(D)(1). These enactments

make clear that, however unfair Plaintiffs may have found the conditions and restrictions

placed on their SUPs, the Planning Board had discretion to impose those conditions,

meaning that Plaintiffs lacked a protected property interest in receiving the version of the

SUP that they sought.

Plaintiffs next point to Section 30.92(B)(7) of the Zoning Law to argue that they

have a "right to engage in non-structural forest management uses without obtaining a

zoning permit and without application of the Zoning Law."  Earlier in their brief, Plaintiffs

argue that:

> Section 30.92.B.7 of the Zoning Law states that a zoning permit shall not be
> required for the following development activities and such activities shall not be
> subject to the requirement of this law: "Nonstructural agricultural and forest
> management uses."  The Zoning Law does not define what nonstructural forest
> management uses consist of, but any common sense understanding of the term
> would include a portable sawmill.  This understanding is supported by the fact that it
> is common for residents of the Town of Camden to purchase, use and operate
> portable sawmills on their property without a requirement to obtain a Special use
> Permit or any other zoning permit.

This argument does not persuade the Court to find that Plaintiffs had a protected property

interest in using their property without the restrictions and conditions contained in the SUPs.  As Plaintiffs admit, the language of Section 30.92(B)(7) of the Zoning Law is ambiguous in this respect, and surely does not provide the right to unlimited use without constraint on which Plaintiffs' rely.  The other strictures that constrain uses of Rural Districts laid out in the Zoning Law still apply.  Plaintiffs' proposed uses certainly involve more than just operating a portable sawmill to clear some timber from their property. Moreover, that individual property owners occasionally using a portable sawmill to clear trees off their property is a use quite distinct from the one that Plaintiffs undertook: using a saw to cut large planks that would be assembled together into a mat used to stabilize cranes.  The first is a land-management activity.  The second is a manufacturing operation.  No reasonable reading of Section 30.92(B)(7) creates the sort of unquestioned right without out any discretion or input from the Planning Board necessary to create a protected property interest.

Finally, Plaintiffs contend that "to the extent that Plaintiffs did need to obtain a special use permit under the Zoning Law for any aspect of the operations of the Crane Mat Business, the vested property rights created by the Special Use permit issued to Plaintiff Todd [Bristol] dated June 10, 2021" created a protected property interest.  The Court notes that the permit issued on June 10, 2021 is the sort of discretionary decision to grant a zoning variance that does not create a property interest.  The Court also notes that much of the factual recitation above concerns attempts to convince zoning officials to alter that decision, and that Plaintiffs' complaint here is largely that the Town continued to assert restrictions and conditions that Plaintiffs did not like.  Such allegations do not describe a protected property interest, but instead represent an attempt to make this Court

22

a zoning board of appeal, which the law does not allow.

The Court therefore finds that Plaintiffs have failed to plead a protected property interest, and cannot make out a due process claim on that basis.  As a general matter, the Court notes that the allegations in the complaint, related above, indicate that Plaintiffs' complaint here is that Defendants issued zoning permits that contained conditions that made profitable operation of Plaintiffs' businesses more difficult.  Plaintiffs hoped to operate for more hours than the SUPs they obtained permitted.  They wanted to make more use of the byproducts of their operations.  They disliked having to erect buildings, put up fences, and take measures to avoid dust.  Plaintiffs allege that Defendants' failure to issue exactly the SUPs they sought demonstrates a failure to follow Town law, but the facts laid out in the Complaint also make clear that Defendants had discretion in deciding the conditions to be added to the SUP.  Those allegations also make clear that Plaintiffs were able to use the procedures available in the Town Zoning Law to challenge the conditions and restrictions on their SUPs and to obtain some relief.  Plaintiffs' Complaint therefore admits that Plaintiffs used the process available to them to challenge zoning decisions.  More important, the Complaint also admits that the zoning planning board had discretion sufficient for the Court to find that Plaintiff had no property interest in the issuance of the SUP they sought rather than the one with conditions that they received.  Without a protected property interest, no procedural due process claim can lie.  The motion is granted in this respect.  Because the facts alleged admit that no protected property interest exists here, the Court will grant this portion of the motion with prejudice.

### C.    Substantive Due Process

Defendants also challenge Plaintiffs' substantive due process claim, relying in part

23

on the lack of a protected property interest.  "In assessing a substantive due process claim in the context of land use regulation, this Court is always 'mindful of the general proscription that 'federal courts should not become zoning boards of appeal to review nonconstitutional land[-] determinations by the Circuit's many local legislative and administrative agencies.'" Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996)(quoting Zahra v. Town of Southfield, 48 F.3d 674, 679-80 (2d Cir. 1995)(alterations in original)). As such, "a party asserting a deprivation of substantive due process must first establish a valid property interest within the meaning of the Constitution."  Id.  The Court applies the same test in determining whether a property existence exists in a substantive due process case as in a procedural due process case.  See, e.g., Puckett v. City of Glen Cove, 631 F.Supp.2d 226, 237 (E.D.N.Y. 2009) ("To demonstrate a violation of due process rights based upon a zoning decision, whether procedural or substantive, a plaintiff must first demonstrate the possession of a federally protected property right to the relief sought.").  If the party establishes such a property interest, the party must then show "that the defendant acted in an arbitrary or irrational manner in depriving him of that property interest." Crowley, 76 F.3d at 52.

As explained above, Plaintiffs have not plausibly alleged the existence of a federally protected property right because they have not shown a lack of discretion on the part of zoning officials in restricting uses on their property.  As such, the facts they allege demonstrate that they cannot state a substantive due process claim. As with their procedural due process claim, the facts admitted with reference to the property right mean that Plaintiffs could not plead additional facts demonstrating a right to recover.  The Court will therefore dismiss this portion of the Complaint with prejudice.

### D.    Equal Protection

Defendants next seek dismissal of Plaintiff's equal protection claim.  The Complaint does not allege that Defendants discriminated against Plaintiffs because of some category protected by the Fourteenth Amendment, such as race or national origin.  Under those circumstances, a Plaintiff might allege an equal protection violation using "two slightly different theories." Bizzarro v. Miranda, 394 F.3d 82, 86 (2d Cir. 2005).  First, a plaintiff might allege a "selective enforcement" theory–that "defendants intentionally treated them differently from other similarly situated" persons "because of a malicious intent to injure them." Id.  "Second, failing proof of a malicious motivation," a plaintiff could allege advance a "class of one" theory—that "defendants intentionally treated them differently from others with no rational basis for the difference in treatment." Id. (citing Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).

"Under either standard, a plaintiff must make a showing of different or unequal treatment." 33 Seminary LLC v. City of Binghamton, 670 Fed. Appx. 727, 730 (2d Cir. 2016).  A party who cannot point to a "substantially comparable instance" of the defendant's "application of its zoning law with respect to the very issue that is the focus of its equal protection claim" cannot support that claim. Id. at 730.  "The purpose of requiring similarity is to make sure that no legitimate factor could explain the disparate treatment." Fortress Bible Church v. Feiner, 694 F.3d 208, 222 (2d Cir. 2012).  In such cases, "the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005).  To prevail, "a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of the comparator to a degree that would

25

justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of mistake." <u>Clubside, Inc. v. Valentin</u>, 468 F.3d 144, 159 (2d Cir. 2006).

In alleging their equal protection claim, Plaintiffs allege that they "have been unlawfully prevented from operating their business on the Subject Property because they have been forced to comply with restraints which violate the Zoning Law and which are not imposed on any other resident or business in the Town." Complt. at ¶ 197. Further, Plaintiffs claim, they "have been subject to selective treatment due to impermissible considerations, including a malicious or bad faith intent to injure Plaintiffs and their business operations." <u>Id.</u> at ¶ 198. Such allegations are merely conclusory, and do not point to any specific comparator or any specific conduct that amounts to such an attempt at bad faith. Fatally to Plaintiffs' claim in this respect, they have not pointed in their Complaint towards any other business in a Rural District that sought a permit to engage in substantially similar activity that obtained a permit. Without such allegations, the Defendants' motion must be granted in this respect as well.

In their briefing, Plaintiffs allege that "[a]t the time of the Complaint, Plaintiffs operated the only crane mat drilling and assembly business in the Town of Camden. However, there were several other sawmill and lumber yard operations in the Town of Camden which either were allowed to operate without a zoning permit or were issued a Special Use Permit without restrictions on operation." Plaintiffs point to a sawmill operated by Leonard Davis in the Town of Camden, provide an address, and allege that Davis has not been required to obtain a permit to operate that mill. They also allege that "numerous

26

residents own and operate portable sawmills without obtaining any Special Use Permit or zoning permit." Plaintiffs also point to another property in Camden that received a permit for a mat drilling facility on October 5, 2022 that had fewer restrictions than the permit they received, and allege that the Zoning Planning Board did no factual inquiry before issuing that SUP.

Such allegations go much farther than the Complaint in alleging a comparable business received treatment different to Plaintiffs when seeking to obtain permitting for a similar facility. The problem with the argument is that actual Complaint contains none of these allegations, and the arguments and facts alleged in a brief in response to a motion to dismiss are not facts the Court can consider in evaluating the sufficiency of a complaint. The fact remains that the Complaint itself does not plausibly allege that Defendants treated a similarly situated person differently than they treated Plaintiffs, or that such treatment was either motivated by malice or lacked a rational basis. Plaintiffs have not here stated a claim. The Court finds, however, that Plaintiffs have not here admitted facts which make recovery under this theory impossible. Should Plaintiffs choose, they would be permitted to file an amended pleading that raises an equal protection claim under an appropriate theory supported by sufficient factual allegations to make their right to recovery plausible. The Court offers no opinion as to whether such a pleading could withstand another motion to dismiss.

### D.    Takings Claim

Defendants next seek dismissal of Plaintiffs' takings claim. "The Takings Clause of the Fifth Amendment provides that 'private property [shall not] be taken for public use, without just compensation.'" Cmty. Hous. Improvement Program v. City of New York, 59

F.4th 540, 550 (2d Cir. 2023) (quoting U.S. Const. amends. V, XIV, § 1).  "Under the

Takings Clause, the government must compensate a landowner" when government action

"effects a 'permanent physical occupation' of his property, or if a regulatory action forces

him to 'sacrifice *all* economically beneficial uses in the name of the common good.'"

Vanderveer v. Zoning Bd. of Appeals, No. 19cv3833, 2020 U.S. Dist. LEXIS 224867, at * 6

(E.D.N.Y. Nov. 30, 2020) (quoting Lucas v. South Carolina Costal Council, 505 U.S. 1003,

1019 (1992) (emphasis in original quotation)).   Government action that does not result in

an appropriation of all beneficial use can constitute a taking "[i]n rare cases . . . 'based on

a complex of acts' . . . 'including [1] the regulation's economic effect on the landowner, [2]

the extent to which the regulation interferes with reasonable investment-backed

expectations; and [3] the character of government action.'"  Id. (quoting Murr v. Wisconsin,

137 S.Ct. 1933, 1943 (2017) (in turn citing Penn. Cent. Transp. Co. v. City of New York,

438 U.S. 104, 124 (1978)).  These situations occur "when the government acts in a

regulatory capacity."  Buffalo Teachers Fed'n v. Tobe, 464 F.3d 362, 374 (2d Cir. 2006).

Plaintiffs' Complaint alleges that a taking occurred "when Defendants required

Plaintiffs to obtain any zoning permits for non-structural forest management uses and

imposed any restrictions or conditions which restrained the Plaintiffs' ability to engage in

non-structural forest management uses on the Subject Property."  Complt. at ¶ 209.

Plaintiffs further allege that a taking occurred "when Defendants issued the Final

Amended Crane mat SUP which stripped Plaintiffs of vested rights and interests set forth

in the Amended Crane Mat SUP."  Id. at ¶ 210.

The allegations in the Complaint make clear that Defendants did not physically take

possession of Plaintiffs' property, nor do Plaintiffs allege that the government's action

forced them to surrender all economically beneficial activity on the property.  While Plaintiffs allege a diminution of their income and expected income from the property, they admit that they continue to operate businesses there and to earn income from the property.  Plaintiffs must therefore show that the regulation of their property in question is one of those rare other types of takings that raise a constitutional concern.  The parties argue the factors stated in Penn Central in stating their positions on these allegations of a "regulatory taking."  See 74 Pinehurst LLC v. New York, 59 F.4th 557, 564 (2d Cir. 2023) ("a regulatory taking . . . occurs when a regulation goes 'too far' in restricting a landowner's ability to use his own property.")).

As to the first factor, the economic impact of the regulation on the landowner, Plaintiffs allege that the regulations caused Plaintiffs "to lose contracts, lose business opportunities, and lose profits."  Id. at ¶ 211.  Their Complaint alleges past "lost productivity, lost business opportunities, lost contracts, lost revenue, and lost profits" of more than $6.8 million, and future lost income of more than $1 million.  Id. at ¶¶ 211-12.  In their briefing, Plaintiffs argue that the case is about lost business opportunities for the crane mat business, not the water business.  Indeed, Plaintiffs claim, the regulation of their crane mat business meant that they redirected resources towards the trucking company to maintain revenues.  Since the trucking company has a lower profit margin, Plaintiffs claim they "suffered further injury."

Plaintiffs do not allege that they were forced to stop operating the crane mat business because of the regulations; instead they claim that their revenue in that particular business decreased and they had to turn to other sources for income from the property.  Plaintiffs allege lost income, which appears substantial, but nowhere in their Complaint do

29

they allege how much income they retained.  They admit that they continued to operate both of their businesses on the property, and do not complain that they could not operate the businesses due to the regulations.  Plaintiffs' Complaint alleges a loss of income and profits from the crane mat business, but not a loss of a business.  In the takings context, however, "loss of profit–much less loss of a reasonable return" does not in itself "constitute a taking."  Park Ave. Tower Associates v. New York, 746 F.2d 135, 139 (2d Cir. 1984). Here, "[t]he critical inquiry . . . is not whether the regulation permits plaintiffs to use the property in a 'profitable' manner, but whether the property use allowed by the regulation is sufficiently desirable to permit property owners to 'sell the property to someone for that use.'"  Id. (quoting Sadowsky v. New York, 732 F.2d 312, 318 (2d Cir. 1984)).  Here, "'the key question' . . . is not whether the regulation allows operation of the property as 'a profitable enterprise' for the owners, but whether others 'might be interested in purchasing all or part of the land' for permitted uses."  Id. (quoting Pompa Construction Corp. v. Saratoga Springs, 706 f.2d 418, 424 (2d Cir. 1983)).

The Court concludes that the first Penn Central factor weighs against finding a regulatory taking in this context.  Even ignoring that Plaintiffs have not alleged that the regulation in question prevented them from operating the crane mat business, but instead have alleged that the regulation limited the operation and profits from the crane mat business, Plaintiffs themselves continued to use the property for a permitted use that they found desirable and profitable.  Thus, Plaintiffs have at best alleged a loss of profits, which does not normally constitute a taking.   They have also admitted that they are able to use the property for a permitted use.  Under those circumstances, Plaintiffs have not alleged facts to make plausible that the first Penn Central factor weighs in their favor.

30

Plaintiffs next argue that the second factor–the extent that the regulation interferes with their investment-backed expectations–weighs in their favor.  Their Complaint alleges that they "acquired the Subject Property specifically because it was in the zoned Rural District of the Town, and Plaintiffs invested significant amounts of money and time into the Crane Mat Business on the Subject Property[.]" Id. at ¶ 212.  They contend that they bought the property because of its presence in the Rural zone, "which would specifically allow for [their] planned activities."  Moreover, they pled that "the addition of a portable sawmill should have been exempt from requiring any zoning permit in accordance with the Zoning Law."  Plaintiffs, they claim, there "made distinctive investment backed expectations . . . that the Zoning laws would be properly implement[ed], and the illegal application and imposition of restrictions . . . has interfered with these investment backed expectations."

"The reasonableness of owners' expectations ensures that compensation is limited to those owners who can demonstrate that they bought their property in reliance on a state of affairs that did not include the challenged regulatory regime." 74 Pinehurst, 59 F.4th at 567.  "[T]he critical time for considering investment-backed expectations is the time a property is acquired, not the time the challenged regulation is enacted." Meriden Trust & Safe Deposit Co. v. FDIC, 62 F.3d 449, 454 (2d Cir. 1995)).  In 74 Pinehurst, owners of rental properties challenged amendments to New York City's Rent Stabilization Law ("RSL"), contending that amendments represented an unconstitutional taking.  59 F.4th at 562.  In applying the second Penn Central factor, the Court concluded that "any investor could reasonably expect limits on the use of rental properties, such as those provided by the RSL." Id. at 567.  The Court noted that regulations on rent had been in place in New

York City for decades, and had frequently been altered or amended.  Id.  Given this history

"a reasonable investor . . . would have anticipated their rental properties would be subject

to regulations, and that those regulations in the RSL could change yet again."  Id.

Sometimes such changes favored landlords; sometimes they favored renters.  "All of this

means that," the court found, "for decades New York landlords have taken a calculated

risk when they entered the rental market.  In such circumstances, the fact that this risk

then results in a loss does not constitute a taking."  Id. at 567-68.

Plaintiffs do not allege that the Town instituted new zoning regulations after they

purchased the property.  Instead, they contend that the Town applied the zoning

regulations in a way contrary to law.  The Court has already explained how the Plaintiffs

understanding of the Zoning Law ignores the way that the law requires landowners in the

Rural District to obtain permits for the uses that Plaintiffs sought to make of their property.

The series of events laid out in Plaintiffs' Complaint indicates that the uses they wanted to

make of the land in question required them to interact with zoning officials, who might

reasonably read the law differently from the way that Plaintiffs do.  The facts alleged by

the Plaintiffs also indicate that the regulations governing their use of their land were

subject to a process that led to changes in the limits and restrictions on use; Plaintiffs

sought amendments to their SUPs, and that led to changes in them.  A regulatory process

that contains appeals and reconsideration would not lead a reasonable landowner to

conclude that the landowner was entitled to use without restriction or conditions.  A

reasonable landowner in the Town of Camden, like the owner of an apartment building in

New York City, would expect regulators authorized by law to act to assert some right to

regulate land use.  In Camden, a reasonable landowner would have to assume that Town

officials would place limits, restrictions, and compromises on use of the land based on the Zoning Law.  This factor weighs against Plaintiff's takings claim as well.

As to the third <u>Penn Central</u> factor, "[t]he Supreme Court has instructed that in analyzing the 'character' of the governmental action, courts should focus on the extent to which a regulation was 'enacted solely for the benefit of private parties' as opposed to a legislative desire to serve 'important public interests.'" <u>77 Pinehurst</u>, 59 F.4th at 568 (quoting <u>Keystone Bituminous Coal Ass'n v. DeBenedictis</u>, 480 U.S. 470, 485-86 (1987)). In their briefing, Plaintiffs do not address whether the regulation existed to benefit a private party or a public good.  Instead, they argue that they "have alleged facts which demonstrate that the Town Defendants illegally stripped Plaintiffs of a property right vested in Plaintiffs by the Special Use Permits issued to" Todd Bristol in October 2020 and June 2021.  Those actions, Plaintiffs claim, "deprived [them] of significant rights and the deprivation of such rights caused Plaintiffs substantial harm."[4]  The facts alleged in the Complaint indicate that the restrictions in question imposed limits on hours of operation, instituted attempts to control dust, to limit noise, to limit disruption of other properties nearby, and to prevent the accumulation of waste products on the property.  Attempts to control noise, prevent dust in the air, limit disruption of neighboring properties, and prevent accumulated waste are efforts to protect the public, even if they cut into a landowners' profits.  This factor therefore also weighs against Plaintiffs' takings claim.

The Court finds that Plaintiffs have not alleged facts sufficient to support a regulatory takings claim, or any other kind of takings claim.  The Court will grant the

---

[4]This argument implicates the second <u>Penn Central</u> factor more than the third.

motion to dismiss this claim as well.  The Court will grant this portion of the motion with prejudice, as Plaintiffs have admitted facts, as explained, that would make recovery on their takings claim impossible.

### E.    Individual Liability

The individual Town Defendants also seek dismissal of the claims against them. The Court will grant the motion as to the federal constitutional claims raised against those Defendants, since a requirement of individual liability on such claims is "that the defendant caused the plaintiff to be deprived of a federal right."  Back v. Hastings on Hudson Union Free Sch. Dist., 365 f.3d 107, 122 (2d Cir. 2004).  Here, Plaintiffs have not plausibly alleged a violation of any federal right.  None of the individual Defendants can be liable. Since Plaintiffs have not plausibly pled any violations of their constitutional rights, none of the other Defendants can be liable on those claims either.

### F.    State Law Claims

The Court has dismissed all of the expressly federal claims.  As such, the only basis for this Court's continuing jurisdiction over the remaining claims–which all arise under New York law–is supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  See 28 U.S.C. § 1367(a) (providing that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").  Of course, the Court "may decline to exercise supplemental jurisdiction . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. §

1367(c)(3).  "Courts must consider 'the values of judicial economy, convenience, fairness, and comity' when deciding whether to exercise supplemental jurisdiction."  Kroshnyi v. U.S. Pack Courier Servs., 771 F.3d 93, 102 (2d Cir. 2014) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).  Still, "if a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'"  Brzak v. UN, 597 F.3d 107, 113-114 (2d Cir. 2010) (quoting Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 250 (2d Cir. 2008)).

Plaintiffs have raised a number of state-law claims against the moving Defendants. As this litigation is in an early stage, the Court will decline to exercise jurisdiction over matters that might better be addressed by a New York State court more versed in those issues.  As the Court has granted the motion to dismiss without prejudice as to Plaintiffs' equal protection claim, however, the Court will not immediately remand the case to State court.  Instead, the Court will permit Plaintiffs the option of choosing to file an Amended Complaint that raises as its only federal claim equal protection.  If the Plaintiffs choose to file an Amended Complaint, the Court will address the Defendants' motions made towards the state-claims without the need for further briefing.  Defendants may answer or otherwise respond to a renewed equal protection claim within the appropriate time.[5]  For

---

[5]The Court recognizes that Plaintiffs have filed a claim for declaratory judgment, though they did not specify that they raised that claim under the federal Declaratory Judgment Act.  Even if they had, the Court would exercise its power to decline to enter a declaratory judgment.  See, e.g., Bausch & Lomb, Inc. v. CIBA Corp., 39 F.Supp.2d 271, 274 (W.D.N.Y 1999) ("The Declaratory Judgment Act gives district courts a 'unique breadth of discretion to decline to enter a declaratory judgment' even if jurisdiction exists.") (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995)).  Here, the declaratory judgment that Plaintiffs seek rests on state law and requires interpretation of municipal zoning ordinances.  That work does not implicate federal law and is better left to a New York court.

those reasons, the Court will also grant the other Defendants' motions to dismiss as they relate to the federal claims and deny them with leave to renew as they relate to the state claims.

## IV.    CONCLUSION

For the reasons stated above, the Defendants' motions to dismiss, dkt. #s 31, 40, 45 are hereby **GRANTED IN PART** and **DENIED IN PART WITH LEAVE TO RENEW**, as follows:

The motions are **GRANTED** with prejudice with respect to Plaintiffs' Section 1983 procedural due process, substantive due process, and takings claims and **GRANTED** without prejudice with respect to Plaintiffs' Section 1983 equal protection claim.  The motions are **DENIED WITH LEAVE TO RENEW** with respect to Plaintiffs' state-law claims, including their claim for declaratory judgment.

Plaintiffs may file an Amended Complaint that raises an equal protection claim as the only federal claim within thirty days of the date of this order.  If Plaintiffs fail to file an Amended Complaint within thirty days, the Clerk of Court shall **REMAND** the case to the Supreme Court of Oneida County, New York.  If Plaintiffs file an Amended Complaint within the required time, Defendants shall answer or otherwise respond to the Amended Complaint within the time required by the Federal Rules of Civil Procedure.  If Defendants move to dismiss all or a portion of the Amended Complaint, the parties may rely on their previous briefing in addressing any state-law claims raised in the Amended Complaint.

**IT IS SO ORDERED.**

**Dated:** April 19, 2023

Thomas J. McAvoy
Senior, U.S. District Judge

37