UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**TODD BRISTOL, KIMBERLY BRISTOL, and**
**SUGAR SHACK'S WATER, INC.,**

                                **Plaintiffs,**

     vs.                                           **6:22-CV-845**
                                                     **(BKS/ML)**

**TOWN OF CAMDEN, et al.,**

                                **Defendants.**
_____

**Brenda K. Sannes,**
**Chief U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

Before the Court are the renewed motions to dismiss of various Defendants in this case, which involves disputes over the enforcement of zoning ordinances by Defendant Town of Camden.  See dkt. #s 61, 65, 76.  Senior U.S. District Judge Thomas J. McAvoy previously dismissed Plaintiffs' initial Complaint with leave to renew certain claims.[1] Plaintiffs filed an Amended Complaint, and Defendants responded by filing the instant motions.  The motions are fully briefed.

**I.    BACKGROUND**

The Court assumes familiarity with Judge McAvoy's prior decision in this action, dkt. # 58, and provides only a general overview of the claims necessary for the resolution of

---

[1]This case has been reassigned to the undersigned.

this decision.

Plaintiff Todd Bristol owns real property located at 9776 Shady Lake Road in the Town of Camden, New York. Amended Complaint ("Amd. Cmplt."), dkt. # 59, at ¶ 17. Todd Bristol and his wife, Plaintiff Kimberly Bristol, are sole shareholders and officers of Plaintiff Sugar Shack's Water, Inc. Id. at ¶ 24. Kimberly Bristol is sole director of the company, and both individual Plaintiffs are employees of Sugar Shack's. Id. at ¶¶ 25-26. Sugar Shack's leases the property on Shady Lake Road from Todd Bristol for the purpose of conducting the company's business operations. Id. at ¶ 27.

The property in question consists of more than 22 acres of land, most of which is wooded. Id. at ¶ 29. The land surrounding the property is "farmland and wooded lots which are frequently used for agricultural purposes (such as mowing and baling hay, and planting and harvesting corn) and forestry uses (such as logging or cutting trees for firewood)." Id. at ¶ 30. Sugar Shacks operates two "separate and distinct primary lines of business." Id. at ¶ 31. The first business is a trucking company that "primarily hauls and delivers water." Id. at ¶ 32. The second business constructs crane mats.[2] Id. at ¶ 33. That operation requires use of a saw mill and drilling equipment to put the mats together. Id.

The events giving rise to this matter center around the Town of Camden's zoning decisions, which have limited the ability of Plaintiffs to operate their businesses for the purposes and at the times they desire. Plaintiffs contend that those decisions do not

---

[2] "Crane mats are designed to support both the weight and the movement of heavy machinery. Built from high-quality, durable materials like timber, crane mats are used for support and stabilization purposes." https://www.astrocrane.com/things-to-know-about-timber-crane-mats/ (consulted 4/12/23).

2

comport with the Town's zoning ordinances, and that the decisions of zoning officers and officials were not motivated by a desire to enforce zoning ordinances fairly, but out of favoritism to other businesses which had longer and deeper connections to the community than Plaintiffs. Plaintiffs' Amended Complaint offers great detail about these various decisions; the Amended Complaint alleges that other similar businesses did not face the same restrictions, and that Plaintiffs' neighbors lobbied zoning officials to enforce ordinances against Plaintiffs in an unfair and arbitrary fashion.

Plaintiffs offered a similar set of allegations in their original Complaint, which the Defendants also sought to dismiss for failure to state a claim upon which relief could be granted after removing the case to this Court from the Supreme Court of Oneida County, New York. On April 19, 2023, Judge McAvoy issued a Decision & Order that granted the Defendants' motions with prejudice in part, granted the motions without prejudice in part, and denied the motions with leave to renew in part. See dkt. # 58. The Court concluded that Plaintiffs could not make out any procedural due process, substantive due process, or takings claims under 42 U.S.C. § 1983, and dismissed those claims with prejudice. The Court concluded that Plaintiffs failed to plausibly allege an equal protection claim under § 1983, but permitted Plaintiffs to file an amended complaint, to attempt to allege facts sufficient to state such a claim. The Court noted that a plaintiff can allege an equal protection violation under two different theories: (1) a "class of one" theory – that defendants intentionally treated the plaintiff differently than others with no rational basis for the difference in treatment, or (2) a "selective enforcement" theory – that defendants intentionally treated the plaintiff differently from other similarly situated persons because of a malicious intent to injure them. See Bizzarro v. Miranda, 394 F.3d 82, 86 (2d Cir. 2005).

Because the Court had dismissed all of Plaintiff's federal claims, the Court declined to address Defendants' motions to dismiss the state-law claims. Instead, the Court concluded that Plaintiffs could either file an Amended Complaint that raised "an equal protection claim as the only federal claim" or have the case remanded to the State court. See dkt. # 58, at 36.

Plaintiffs filed an Amended Complaint with fourteen causes of action. See dkt. # 59. Count One seeks a declaratory judgment that Defendants violated Town of Camden zoning laws. Count Two raises an equal protection claim under 42 U.S.C. § 1983. Counts Three through Fourteen raise state-law tort claims, including negligent and intentional infliction of emotional distress, tortious interference with a contract, private nuisance, and civil conspiracy.

## II.  LEGAL STANDARDS

The Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). This tenet does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).

## III.  ANALYSIS

There are three separate motions to dismiss. Defendants Town of Camden, the Town of Camden Planning Board, the Town of Camden Town Board, the Office of the Code Enforcement Officer of the Town of Camden, Tyler Henry, Mark Barker, Cory Mutch, and James Johnson ("the Town Defendants"), seek to dismiss all claims on which they are named, arguing *inter alia*, that the equal protection claim is barred by collateral estoppel. See dkt. # 76. Two other Defendants, Michael Hawkes and Gennifer Henderson, also brought motions to dismiss. See dkt. # 61, 65. The Amended Complaint, however, only raises state-law claims against Hawkes and Henderson and, in light of the Court's decision, dismissing the only federal claim, the Court declines to exercise supplemental jurisdiction over the state law claims, and denies the motions to dismiss filed by Hawkes and Henderson, without prejudice to renewal in state court.

### A.  Equal Protection

The Town Defendants argue that the equal protection claim should be dismissed because the New York Supreme Court's decision dismissing Plaintiffs' Article 78 proceeding concerning the Town's zoning decisions has preclusive effect and bars their equal protection claim, and because Plaintiffs have not pled that any similarly-situated person faced similar treatment. Plaintiffs respond that collateral estoppel does not apply to bar this claim, and that they have plausibly alleged both selective enforcement and class-of-one theories of equal protection.

### I.  Legal Standard

"Federal courts must give State court judgments 'the same preclusive effect as would be given to the judgment under the law of the State in which the judgment was

rendered.'" Boomer v. Bruno, 134 F.Supp.2d 262, 267 (N.D.N.Y. 2001) (quoting Johnson v. Watkins, 101 F.3d 792, 794 (2d Cir. 1996)). Collateral estoppel "precludes a party from relitigating in a subsequent proceeding an issue of law or fact that has already been decided in a prior proceeding." Boguslavsky v. Kaplan, 159 F.3d 715, 719-720 (2d Cir. 1998). "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior application and is decisive to the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action" Evans v. Ottimo, 469 F.3d 278, 281 (2d Cir. 2006) (citing Kaufman v. Eli Lilly & Co., 65 N.Y.2d 448, 455-56 (N.Y. 1985)). In addition to these factors, the "court must satisfy itself that application of the doctrine is fair." Bear, Stearns & Co. v. 1109580 Ont. Inc., 409 F.3d 87, 91 (2d Cir. 2005).

"[T]he burden of proving identity of issue rests on the proponent of collateral estoppel[.]" Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 730 (2d Cir. 2001). Courts take "a functional approach" to "analyzing collateral estoppel in New York, and it should not be applied rigidly." Id. at 731. The question is whether there is "an identity of issue which has necessarily been decided in the prior action and is decisive in the present action[.]" Schwartz v. Public Adm'r of County of Bronx, 24 N.Y.2d 65, 71 (1969). "The prior decision or issue need not have been explicit" for collateral estoppel to apply "'if by necessary implication it is contained in that which has been explicitly decided.'" Postlewaite v. McGraw-Hill, Inc., 333 F.3d 42, 48 (2d Cir. 2003) (quoting Norris v. Grosvenor Marketing Ltd., 803 F.2d 281, 1285 (2d Cir. 1986)). "The 'necessary implication' requirement must be clearly met for a decision to have collateral estoppel effect on an issue it does not explicitly address." Fuchsberg & Fuchsberg v. Galizia, 300

6

F.3d 105, 110 (2d Cir. 2002).

### ii. Article 78 Decision

Defendants rely on a decision issued on May 8, 2023 by Justice Scott J. DelConte of the Supreme Court of Oneida County, New York a dismissing petition under Article 78 of the CPLR. See Exh. J to Motion to Dismiss of the Town Defendants, dkt. # 76-12; see also NY CPLR § 7801 *et seq.* In that proceeding, "Petitioners Todd Bristol and Sugar Shack's Water Inc. challenge[d], and [sought] to eliminate, restrictions in a special use permit issued by Respondent Town of Camden Planning Board, arguing that they are arbitrary and capricious." Id. at 3.[3] The case concerned the same property involved in this matter and the same Town Board decisions at issue here. Justice DelConte noted that Todd Bristol and his wife "own and control Sugar Shack's Water Inc., which operates a trucking business and manufactures crane mats[.]" Id. "Bristol applied for a special use permit" for use in the crane mat business. Id. The permit restricted the hours of operation. Id. Bristol sought an amended permit in 2021, during the pandemic, as a lumber shortage occurred and Bristol purchased a portable saw mill to facilitate operations. Id. at 4. Bristol and the Town disagreed about whether a new permit was necessary for that use. Id. Bristol applied for such a special use permit, which issued with a number of restrictions. Id. After a Code Enforcement Officer issued a Notice of Violation in September, 2021, Bristol applied for an amendment to the special use permit. Id. at 5. After discussion, and further amendments, the Planning Board voted to grant the new application, with additional restrictions. Id. at 5-6. Bristol complained that the new

---

[3]The Court cites to the pages assigned by the Court's Electronic Filing System ("ECF") for this document.

restrictions were more restrictive than the original permit. Id. at 7. That dispute led to the Article 78 proceeding.

Bristol and Sugar Shack's brought the Article 78 proceeding on May 2, 2022, "seeking to strike restrictions" in the special use permit. Id. "The Petition alleges, among other things, that the restrictions are arbitrary and capricious, and were improperly imposed by the Planning Board in response to public pressure." Id. at 7.[4] Bristol and Sugar Shack's contended "that the Town Respondents 'arbitrarily and capriciously impose[d] unlawful restrictions and conditions with no rational basis and with no supporting facts;'" they argued that the restrictions violated Section 30.21 of the Town of Camden Zoning Law, and were "'not supported by the General Standards for Special Use Permits'" in the Town zoning law. Id. at 8.

Justice DelConte dismissed the Article 78 petition. He noted that "[z]oning laws 'are enacted to protect the health, safety, and welfare of [the] community,' creating a social contract between the municipality and its citizens as to what conduct will be permitted in which areas, and what conduct will be prohibited[.]" Id. (quoting Sun-Brite Car Wash, Inc. v. Board of Zoning & Appeals, 69 NY2d 406, 412 (1987)). He described the zoning law and noted that Plaintiffs' proposed uses required special use permits. Id. at 8-9. Justice DelConte found that "Bristol's personal belief that the use of the sawmill constitutes a nonstructural agricultural and forest management use" exempt from the special permit requirement "is simply incorrect since the sawmill is not being used to manage the

---

[4] The Petition initially sought monetary damages, but after a court conference, "[a]n Amended Verified Petition was then filed omitting the demand for monetary damages, and a separate plenary action for monetary relief was separately commenced and removed to Federal Court[.]" Id. (internal citations omitted).

8

standing timber on the" property. Id. at 9. "Instead, the sawmill is used to dimensionally cut a high volume of trucked-in lumber in order that it can be further assembled into crane mats." Id. Justice DelConte also found that the Town Zoning Law empowered the Planning Board "'to impose such reasonable conditions and restrictions'" as necessary to special use permits to meet the general purposes of the zoning laws. Id. Such conditions and restrictions could be aimed at limiting "'excessive noise, vibration, or odor'" and to limit other effects related to light, noise, smoke or other aesthetic issues that could impact nearby residential areas. Id.

The Justice noted that "'[it is well-settled that a zoning board may impose appropriate conditions and safeguards in conjunction with a grant of a special use permit.'" Id. at 10 (quoting Smoke v. Planning Bd. of Town of Grieg, 138 AD3d 1437, 1439 (4th Dept. 2016)). The restrictions imposed on the special permit, Justice DelConte found, were "designed to protect the health, safety and welfare of nearby residents," including "sight lines of the mat manufacturing facility and disturbing noise from the sawmill, grinder . . . chainsaws, and backup beepers." Id. The Justice further found that "[w]hile Bristol and Sugar Shack's may conclude that the restrictions imposed by the Planning Board are unnecessary, it is clear based upon the record before this Court that they are not wholly arbitrary or unreasonable." Id. He noted that "[i]t is well established that courts may set aside a zoning board determination only where the record reveals that the board acted illegally or arbitrarily, or abused its discretion, or that it merely succumbed to generalized community pressure . . It matters not whether, in close cases, a court would have, or should have, decided the matter differently. The judicial responsibility is to review zoning decisions but not, absent proof of arbitrary and unreasonable action, to make them." Id.

9

(quoting Express View Development, Inc. v. Town of Gates, 147 AD3d 1427, 1428 (4th Dept. 2017)(internal citations omitted)).  Justice DelConte therefore found that "the Petition in this action must be dismissed, with prejudice on the merits." Id. at 10.

Here, there can be no doubt that Plaintiffs had a full and fair opportunity to litigate their claims regarding the Town's zoning decision in the Article 78 proceeding. The Article 78 Petition described the facts at issue very similar to the allegations in this action.  The Petition described Plaintiffs' business operations.  Petition, attached to DelConte opinion, dkt. # 76-12, at ¶¶ 10-16.  The Petition explained the dispute over permits Id. at ¶¶ 17-18. The Petition described the role that "Complaining Neighbors" played in that dispute, alleging that they did "not want [Plaintiffs] as [neighbors] and no amount of restrictions and limitations on" their "business activities" would mollify them.  Id. at ¶¶ 19-31.  The Petition alleged that "the Planning Board continuously and repeatedly deferred to and bowed to the Complaining Neighbors' demands to place legal, unconstitutional, and unconscionable restrictions on" Plaintiffs' business.  Id. at ¶ 31.

Further, the Petition alleged that "[t]here is no legal purpose or support for any of the Restrictions and Conditions imposed by the Final Amended Crane Mat SUP on Petitioners' use of the Subject Property.  The action of the Planning Board in imposing and enforcing these Restrictions and Conditions is arbitrary and capricious and deprives Petitions of all reasonable use of their property without due process[.]"  Id. at ¶ 83.  Thus, Plaintiffs concluded, the restrictions about which Plaintiffs complained were "(1) unsupported by and contradictory to the Zoning Law; (2) arbitrary and capricious; (3) ha[d] no rational basis and (4) [were] made without regard to the facts."  Id. at ¶ 90.  Justice DelConte's decision reflects that Plaintiffs were represented by counsel, and that in

rendering his decision, the Justice examined an order to show cause, an amended verified petition, a number of supporting affidavits, and transcripts of proceedings. The Justice issued a detailed written opinion. From this evidence, the Court finds that Plaintiff had a full and fair opportunity to litigate the issues in the Article 78 proceeding. The Court must thus determine whether "the identical issue necessarily was decided in the prior application and is decisive to the present action[.]"  Evans, 469 F.3d at 281.

### iii. Discussion

Defendants argue that Justice DelConte's finding that the Defendant Town did not act in an arbitrary and capricious manner in denying Plaintiffs' request for revisions to the Special Use permit forecloses any equal protection claim under Section 1983 because an element of the equal protection claim is that Defendants acted without a rational basis. Plaintiffs respond that the Article 78 proceeding addressed "whether the actions of the Town Defendants were arbitrary and capricious in reviewing and applying the Zoning Law to Plaintiffs['] application to amend their Special Use Permit."  Plaintiffs' Brief in Opposition to Town Defendants' Motion, dkt. # 78-1, at 13. Plaintiff argues that the Article 78 Court never made a finding on impermissible motives and thus did not address an essential element of an equal protection claim.

In this action Plaintiffs have alleged two theories of equal protection: a selective enforcement claim and a class-of-one claim. A plaintiff may allege a selective enforcement theory–that "defendants intentionally treated them differently from other similarly situated" persons "because of a malicious intent to injure them." Bizzarro, 394 F.3d at 86. A plaintiff may also advance a class-of-one theory—that "defendants intentionally treated them differently from others with no rational basis for the difference in

11

treatment." Id. (citing Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).

The Article 78 Court necessarily decided an issue that is decisive to the class-of-one claim in this action - that is whether the Town had a rational basis for its decision. To prevail on its class-of-one claim Plaintiffs must demonstrate that they were intentionally treated differently from other similarly-situated individuals without any rational basis. Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006). If the Defendants' conduct "was rationally related to the accomplishment of the work of their agency," there was a rational basis. Bizzarro, 394 F.3d at 88-89. "A zoning board's decision can be considered irrational only when the board acts 'with no legitimate reason for its decision.'" Harlen Assoc. v. Inc. Vill. of Mineola, 273 F.3d 494, 500 (2d Cir. 2001) (quoting Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996)). And a finding of a rational basis defeats a class-of-one equal protection claim. Residents for Sane Trash Solutions, inc. v. U.S. Army Corps of Engineers, 31 F.Supp.3d 571, 597 (S.D.N.Y. 2014). Here, since the Article 78 Court determined that the zoning law required a special use permit and empowered the Town to impose reasonable conditions and restrictions upon issuance of the permit; that Town imposed "ten restrictions designed to protect the health, safety and welfare of nearby residents"; and that these restrictions were not "wholly arbitrary or unreasonable," the Article 78 Court necessarily concluded that Defendants had a rational basis for the zoning decisions at issue, and collateral estoppel therefore bars the class-of-one equal protection claim. The Town Defendants' motion to dismiss that claim is therefore granted.

To establish their selective enforcement equal protection claim, Plaintiffs must show that: (1) they, "compared with others similarly situated," were "selectively treated," and (2) that "the selective treatment was motivated by an intention to discriminate on the basis of

12

. . . a malicious or bad faith intent to injure" them. Hu v. City of New York, 927 F.3d 81, 91 (2d Cir. 2019) (quoting Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995)). "The branch of equal protection law that protects individuals from unequal treatment motivated by 'malicious or bad faith intent to injure' provides protection from adverse governmental action that is not motivated by 'legitimate governmental objectives.'" Bizzaro, 394 F.3d at 87 (quoting Esmail v. Macrane, 53 F.3d 176, 180 (7th Cir. 1995)). "If the motivation . . . is to secure compliance with agency objectives, then by definition the motivation is not spite, or malice, or a desire to get someone for reasons wholly unrelated to any legitimate state objective." Id. (internal quotation marks and alteration omitted).

The Amended Complaint alleges that the defendants "selectively enforced" the Zoning Law "at the insistence of the Complaining Neighbors who are members of well established and well connected families"; that "preferential treatment was given "to established members of the community to the exclusion of newcomers"; and that there was "a malicious or bad faith intent to injure Plaintiffs and their business operations to further the personal agendas of members of the Town Board and the Planning Board." Amend. Complt., at ¶¶ 224, 228, 230, 232. Plaintiffs allege that the Complaining Neighbors have "personal and business relationships" with members of the Planning Board that create conflicts of interest (Id. at ¶ 56); that the Planning Board "deferred and bowed to the [well-established and connected] Complaining Neighbors demands" (Id. at ¶ 59, 65); that the Defendants placed unnecessary restrictions on Plaintiffs' business "to serve the Town Defendants' personal self-interests, to protect their friends from competition" and drive Plaintiffs out of business or force them to pay money to a connected family (Id. at ¶ 179); and that the restrictions were "not put in place to protect

13

the health safety and general welfare of the Town's residents" (Id. at ¶ 183).

Although the Plaintiffs' Article 78 Petition does not identify their claim as a selective enforcement claim, Plaintiffs raised the same allegations in their Petition. Justice DelConte noted that the Article 78 petition argued that the restrictions were arbitrary and capricious and *"were improperly imposed by the Planning Board in response to public pressure."* Dkt. # 76-12 at 7 (emphasis added). The Article 78 Petition asserts that the "Complaining Neighbors" have "personal and business relationships with certain members of the Planning Board [and] conflicts of interest," (Dkt. #76-12, ¶ 29), that "the Board bowed to the complaining neighbors demands to place illegal….restrictions" (Id. at ¶ 31), and that the Complaining Neighbors' complaints against Petitioners are "baseless, frivolous and completed unsupported by fact." Id. at ¶ 76.

Justice DelConte expressly recognized that he could set aside a zoning board determination if the record revealed that the Board "merely succumbed to generalized community pressure." Dkt. # 76-12 at 10. Justice DelConte, however, clearly rejected any such claim because he concluded that he had "no authority to remove the challenged restrictions." Id.  And to the extent Plaintiffs' claim of malice is based upon their claim that there was no basis in fact for the restrictions, this was rejected by Justice DelConte who stated that the Planning Board imposed ten restrictions "designed to protect the health, safety and welfare of nearby residents," and ruled that the restrictions were not "wholly arbitrary or unreasonable." Id.

Thus, in the Article 78 proceeding, Justice DelConte considered Plaintiffs' claims that Defendants succumbed to the Complaining Neighbors for reasons unrelated to legitimate governmental objectives and effectively rejected that claim.  See Shelter Inc.

14

Realty v. City of New York, No. CV-O1-7015, 2007 WL 29380 at *8 (E.D.N.Y. Jan. 4, 2007) (collateral estoppel barred selective enforcement claim surrounding a housing dispute because the Article 78 judge "effectively rejected plaintiffs' claim of selective enforcement when it explicitly rejected the arbitrary and capricious claim" and had there been selective enforcement the Article 78 proceeding would not have been dismissed); cf. Latino Officer's Ass'n v. City of New York, 253 F.Supp.2d 771, 787 (S.D.N.Y. 2003) (ruling that officer who "raised in his Article 78 proceeding the arguments that his termination was retaliatory and discriminatory" is barred from raising these claims in federal court because the "state court's determination that the police commissioner's decision to terminate [plaintiff] was supported by substantial evidence and that the penalty of dismissal did not "shock our sense of fairness" "necessarily implied rejection of [plaintiff's] claim that his termination was discriminatory and retaliatory" even though the court did not expressly reject those claims). Here, Plaintiffs raised their claims regarding the Defendants' bad faith deference to the complaining neighbors in their Article 78 petition and Justice DelConte's determination that Defendants had a legal basis for their zoning decisions and that the Board did not merely succumb to community pressure necessarily implicates the rejection of Plaintiffs' claim that the Defendants acted with a malicious or bad faith intent to injure them. Plaintiffs' selective enforcement claim is thus also barred by collateral estoppel and the Defendants' motion to dismiss on that ground is granted.

## B. Supplemental Jurisdiction

15

The Court has dismissed the only remaining claim over which it has original jurisdiction – the equal protection claim[5] – and the only remaining substantive claims in this matter are the state-law tort claims. Since there is no diversity of citizenship between the parties, the only basis for this Court's continuing jurisdiction over those claims–which all arise under New York law–is supplemental jurisdiction under 28 U.S.C. § 1367(a). See 28 U.S.C. § 1367(a) (providing that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). The Court "may decline to exercise supplemental jurisdiction . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Courts must consider 'the values of judicial economy, convenience, fairness, and comity' when deciding whether to exercise supplemental jurisdiction." Kroshnyi v. U.S. Pack Courier Servs., 771 F.3d 93, 102 (2d Cir. 2014) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction

---

[5] The declaratory judgment claim cannot be the basis for federal jurisdiction. The Amended Complaint does not cite statutory authority for Plaintiffs' request for a declaratory judgment that the Town violated zoning law, but even if Plaintiffs attempted to bring that claim under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), "the Declaratory Judgment Act does not by itself confer subject matter jurisdiction on the federal courts . . . Rather, there must be an independent basis of jurisdiction before a district court may issue a declaratory judgment." Correspondent Servs. Corp. v. First Equities Corp., 442 F.3d 767, 769 (2d. Cir. 2006); see Morton v. City of Erie, 335 F.Supp.3d 449, 463 n.5 (W.D.N.Y. 2018).

16

over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

Here, judicial economy weighs in favor of dismissing the state law claims. This case is in its early stages. Discovery has not occurred and Plaintiffs' state-law claims are best addressed by a State Court. The Court will therefore decline to exercise supplemental jurisdiction over those claims and remand the matter to the Supreme Court of Oneida County, New York. The Defendants' motions to dismiss the state-law claims are therefore denied without prejudice to renewal in the state-court proceedings.

## IV.     CONCLUSION

For the reasons stated above, the motion to dismiss of Defendants Town of Camden, the Town of Camden Planning Board, the Town of Camden Town Board, the Office of the Code Enforcement Officer of the Town of Camden, Tyler Henry, Mark Barker, Cory Mutch, and James Johnson, dkt. # 76, is hereby **GRANTED** in part and **DENIED** in part, as follows:

1. The motion is **GRANTED** with prejudice with respect to Plaintiffs' Section 1983 equal protection claim and **GRANTED** with respect to any claim brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a) for lack of subject matter jurisdiction;

2. The motion is **DENIED** without prejudice to renewal with respect to any state-law claims raised in the Amended Complaint. Upon remand, the Defendants may raise any appropriate motion with respect to those claims.

The motion to dismiss of Defendant Michael Hawkes, dkt. # 61, is hereby **DENIED** without prejudice to renewal in any subsequent state-court proceedings. The motion of Defendants Gennifer Henderson and Jacalyn Bates, dkt. # 65, is hereby **DENIED** without prejudice to renewal in any subsequent state-court proceedings; and it is further

**ORDERED** that this action is **REMANDED** to the Supreme Court of the State of New York, County of Oneida for all further proceedings; and it is further

**ORDERED** that the Clerk is directed to mail a copy of this Decision and Order to the Clerk of the Supreme Court of the State of New York, Oneida County for filing in Bristol v. Town of Camden, et al., Index No. Index No. EFCA2022-001552.

**IT IS SO ORDERED.**

Dated: May 28, 2024

*Brenda K. Sannes*
Brenda K. Sannes
Chief U.S. District Judge